Louis M. Kimball, Respondent, *v.* The Farmers and Mechanics' National Bank of Buffalo, Appellant.

When default is made in the payment of a debt secured by a chattel mortgage, the legal title to the property becomes vested in the mortgagee, and thereafter the mortgagor or one holding his title has but an equitable right of redemption.

*It seems,* however, that while the mortgagee of a vessel after default has the legal title, so long as the possession of the mortgagor is not disturbed, he is entitled to receive the freight earned and is liable for supplies and repairs and for the discharge of those duties and obligations due from the owner to the crew, and in the absence of an express contract, the mortgagee is not charged with any of these obligations until he assumes them by taking possession.

N., the owner of a vessel, executed a mortgage thereon to R. & Co. After default in the payment of the debt so secured, N. executed a mortgage on the vessel to plaintiff, and after default in payment of the debt secured, executed a third mortgage to defendant. After this mortgage became due plaintiff took possession of the vessel under his mortgage; he thereafter, at the request of N., consented to allow her to make two round trips from Buffalo to Chicago, upon condition that the freight earned should be paid to him, to be applied on his mortgage. N. executed a written assignment to plaintiff of the entire net freight. The vessel proceeded on her voyage to Chicago, and not having obtained freight at that place went to Milwaukee and took on a cargo for Buffalo, but before sailing was frozen in and remained there until the next spring. The vessel, while at Milwaukee, was attached under a state process upon claims against it. Defendant paid the claims and with the consent of the first mortgagee took possession of the vessel under its mortgage, towed her to Buffalo, delivered the cargo and received the freight earned without knowledge of the assignment to plaintiff. In an action to recover the same, *held* (Earl and Peckham, JJ., dissenting), that while, default having been made in the payment of the first mortgage before the other two were executed, they transferred nothing but the equity of redemption, as against defendant plaintiff had the prior right, and the greater equity; that he was the owner in equity from the time he took possession and as such had the right to retain the vessel; that when he took possession he acquired the rights and subjected himself to the duties and responsibilities of an owner, and he did not lose the one or relieve himself from the other by permitting the original owner to use the vessel for a special voyage, the benefit of which he was to receive; that as the holder of the first mortgage had not asserted his superior right to the possession and to the freight the right to the moneys in controversy became a question of prior or superior

equities between the parties hereto; that the first mortgagee could not keep his own mortgage intact and at the same time by his mere consent confer a right upon defendant to receive the earnings, but until possession was taken under that mortgage, plaintiff was entitled to receive the same; that as between him and defendant he was a first mortgagee, with all the rights and equities incident to that position, and having taken possession, in the absence of evidence that he abandoned the vessel at Milwaukee, and with knowledge of the situation had refused to redeem her from the claims against her, he was entitled to the freight earned less the sum paid by defendant to discharge the liens upon her and the expenses incurred in towing her to Buffalo.

(Argued March 10, 1893; decided June 13, 1893.)

APPEAL from order of the General Term of the Superior Court of Buffalo, made December 28, 1891, which reversed a judgment in favor of defendant entered upon the report of a referee and granted a new trial.

This action was brought to recover freight moneys earned by the schooner *George D. Russell*, and received by defendant.

*Spencer Clinton* for appellant. The respondent having abandoned possession of the vessel to Mrs. Nims, the appellant took possession of the vessel as owner. The mortgage and the taking possession of the vessel made the respondent the owner; as such he made the voyage and was entitled to the earnings of the voyage. (*Judson* v. *Easton*, 58 N. Y. 664; *Bragelinan* v. *Dane*, 69 id. 69; *Hall* v. *Sampson*, 35 id. 274; *Cato* v. *Irving*, 5 DeG. & S. 210.) There is no superior equity in the respondent's claim. (*Kleinberg* v. *Brown*, 8 N. Y. 866.)

*Sherman S. Rogers* for respondent. The assignment of the freight to be earned was good as between Mrs. Nims and the plaintiff. (2 Story's Eq. Juris. § 1055; *Field* v. *Mayor*, etc., 6 N. Y. 179; *Stover* v. *Ecclesheimer*, 3 Keyes, 620; *Douglas* v. *Russell*, 4 Sim. 524; *Curtis* v. *Auber*, 1 Jac. & Walk. 526; *Langton* v. *Horton*, 1 Hare, 549; *Mitchell* v. *Winslow*, 2 Story, 630; *McCaffrey* v. *Woodin*, 65 N. Y. 459; *Coats* v. *Donnell*, 94 id. 177.) The defendant must stand in

the shoes of the mortgagor. It has no legal right to these moneys as mortgagee, and its equities are no greater than those of Mrs. Nims. (*Butler* v. *Mitler*, 1 N. Y. 496; *Judson* v. *Easton*, 58 id. 664; *Tremain* v. *Mortimer*, 128 id. 1; *Leadbetter* v. *Leadbetter*, 125 id. 190; *Brown* v. *Tanner*, L. R. [3 Ch.] 397; *L. M. C. Co.* v. *Wilson*, L. R. [7 Ch. App.] 507.) The equity of the plaintiff in the freight earned is superior to that of the defendant, because it is prior in point of time. (Pom. Eq. Juris. § 413 *et seq. ;* Story's Eq. Juris. § 64.) The plaintiff's equity in the freight is also superior in point of right to that of the defendant. (*Moore* v. *P. T. & S. Co.*, 133 N. Y. 144.)

O'BRIEN, J. This appeal involves but a single question and that is the right to a fund representing freight earned by a vessel, each party claiming to be entitled to it. The material facts out of which the controversy arises are these: On December 22, 1871, Mrs. Sarah E. Nims being the owner of the schooner *George D. Russell*, mortgaged her to the firm of George D. Russell & Co. to secure the payment of her three notes of $2,000 each, payable, respectively, one, two and three years from date. The mortgage was duly recorded in the proper office January 31, 1872, and on December 21, 1872, was duly assigned with the debt to Elbridge G. Spaulding. On April 16, 1873, she executed another mortgage on the vessel to the plaintiff to secure her note for $8,000 and interest, payable in ninety days from that date, and this mortgage was duly recorded June 18, 1873. On October 27, 1873, she executed a third mortgage to the defendant upon this and another vessel to secure the payment of $20,000, which was to become due December 1, 1874. This mortgage was also duly recorded in the proper office.

On the 5th of November, 1875, all these mortgages were due and the owner had made default in the payment of the moneys to secure the payment of which they were given. They all contained the usual power of sale in case of default, the proceeds of the sale in each case to be applied in satisfaction

of the debt. On the day last mentioned the plaintiff being the owner of the second mortgage took possession of the vessel under it and was proceeding to execute the power of sale. While all the mortgages were due, the plaintiff's superior vigilance may be accounted for by the fact that the holder of the first mortgage felt perfectly secure and the holders of the third mortgage had other security. The owner and mortgagor then applied to the plaintiff to permit her to make two round trips from Buffalo to Chicago, for the purpose of earning freight before the close of the season of navigation. He consented to allow the vessel to sail for that purpose upon condition that the freight earned upon the voyages should be paid to him and applied upon his mortgage. Thereupon the owner and mortgagor executed and delivered to the plaintiff an instrument in writing which recited the execution of the mortgage, the default in payment and the seizure of the vessel by the plaintiff, and then in terms assigned to the plaintiff, to be applied upon his mortgage, the entire freight or earnings of the vessel upon the two trips, exclusive of charges for towage, and the vessel having been thus permitted by the plaintiff to sail, proceeded on her voyage to Chicago. Not having obtained freight at that place it proceeded to Milwaukee and took on a cargo of wheat for Buffalo, but before sailing on her return voyage was frozen in and remained there till the spring of 1876. While there she was attached under state process at the suit of an insurance company and delivered to the sheriff. The defendant then asserted its right under the third mortgage and took the vessel from the sheriff and towed her to Buffalo having been first obliged to pay $538.76 in claims that had accrued against the vessel while in the port of Milwaukee and which were liens, and it is admitted that $500 was a proper charge for towing the vessel and cargo from the latter place to Buffalo. On the 15th of May, 1876, she arrived at Buffalo, delivered the cargo, and the freight earned, amounting to $2,748.10, was paid to the defendants, without notice of the assignment of the same by the owner to the plaintiff, but the next day the plaintiff

demanded the money thus received of the defendant and it refused to pay it to him. This action was brought to recover the money thus paid to the defendant for freight. It has been twice tried before referees and each trial resulted in favor of the defendant and was followed by a judgment of reversal at the General Term.

When default is made in the payment of the debt secured by a mortgage on personal property the legal title to the property becomes vested in the mortgagee, and thereafter the mortgagor, or anyone holding his title, has but the equitable right of redemption. (*Butler* v. *Miller*, 1 N. Y. 496; *Judson* v. *Easton*, 58 id. 664; *Tremain* v. *Mortimer*, 128 id. 1; *Leadbetter* v. *Leadbetter*, 125 id. 190; *Champlain* v. *Johnson*, 39 Barb. 606.)

Therefore, the legal title to this vessel passed to Mr. Spaulding, the holder of the first mortgage, upon default of the mortgagor to pay the debt when due, and thereafter the only interest which the mortgagor had was equitable and she could, of course, transfer no greater right to her assignees. Default having been made in the payment of the first mortgage before the second was executed, and in the second before the third was executed, the last two mortgages transferred nothing but the equity of redemption, because the legal title had become vested in the first mortgagee, who could at any time assert that title by taking the property into his possession. Therefore, when the plaintiff took the vessel into his possession, as the holder of the second mortgage, his equitable title was subject to the whole claim of the first mortgagee. The latter was satisfied to wait and while, by taking that course, he lost nothing, neither did his superior title or interest confer any right upon the defendant as the holder of the third mortgage. As against the defendant the plaintiff had the prior right and the greater equity. This was the situation when the plaintiff seized the vessel and took her into his possession. He had the right to retain the vessel as against the defendant though not as against Spaulding. So long as the latter did not interfere the plaintiff, as to the defendant, was the owner of the vessel in equity from

the time that he took possession, and entitled to the freight earned while in his possession, the same as a mortgagee of land in possession is entitled to the use or rents after such possession is taken. But while the holder of the first mortgage, after default in payment of his debt, became vested with the legal title to the vessel, yet as he never took possession he did not acquire all the rights nor subject himself to all the duties and responsibilities of owner. So long as the possession of the mortgagor was not disturbed she was entitled to receive the earnings of the vessel and was liable for supplies and repairs and for the discharge of those duties and obligations which are due from the owner of a ship or vessel to the crew. These obligations generally devolve upon the person who has the possession and control of the vessel and who navigates her, and he is entitled to receive the freight earned and paid while this possession and use is permitted to continue. The mortgagor, though having the legal title after default, is not charged with any of these obligations, in the absence of express contract, until he assumes them by taking possession of the vessel and then he becomes entitled to receive the earnings or moneys due for freight. These principles are quite familiar in maritime law having been settled by numerous cases in this country and in England. (*Miln* v. *Spinola*, 4 Hill, 177; *Champlin* v. *Butler*, 18 Johns. 169; *Thom* v. *Hirkley*, 7 Cow. 697; *Heskete* v. *Stevens*, 7 Barb. 488; *McIntyre* v. *Scott*, 8 Johns. 159; *Delano* v. *Wright*, 1 Robt. 298; *Weston* v. *Wright*, Id. 312; *Webber* v. *Sampson*, 6 Duer, 358; *Scarf* v. *Metcalf*, 107 N. Y. 211; *Gabrielson* v. *Waydell*, 135 id. 1; *Wilson* v. *Wilson*, L. R. [14 Eq. Cases] 40; *Brown* v. *Tanner*, L. R. [3 Ch.] 397; *Liverpool Marine Credit Company* v. *Wilson*, 7 Ch. App. Cases, 507.)

When the plaintiff took the vessel into his possession he acquired these rights and subjected himself to all these duties and responsibilities, and it would be quite difficult to show that he lost the one or relieved himself from the other by permitting the original owner to use the vessel for a special voyage which was to inure to his benefit. He did not release or abandon any

right that he had acquired by the seizure of the vessel in express terms, and, as the voyage was undertaken for his benefit and depended upon his assent, it is quite likely that he remained charged with all the obligations of owner during the trip. The paper that he took from the general owner had no other effect than to secure to him, so far as she was concerned, the freight earned upon the voyage. The fact that plaintiff contracted with her to make a special trip for his own profit had no more effect upon his *status* as a mortgagee in possession than if he had made the same contract with a stranger.

The right of the mortgagor to receive the earnings of the vessel was interrupted by the plaintiff's seizure and never restored to her. After that she made the voyage by his permission and for his benefit, and while the holder of the first mortgage might have asserted his superior right to the possession at any time and to the freight, which was but an issue or incident of the vessel itself ; yet as he did not, the right to the moneys in controversy becomes a question of prior or superior equities between the plaintiff and the defendant. We have seen that a mortgagee of a vessel in possession is, for all practical purposes and for the time being, the owner, and, therefore, the plaintiff's right in equity to the freight must prevail unless it was displaced by some superior equity in favor of the defendant. The mortgagor, if she had any right whatever to the freight in question, had expressly assigned it to the plaintiff, and such a transfer, though the subject had no actual existence at the time but rested in expectancy merely, is good in equity and takes effect in favor of the assignee when the thing or demand assigned comes into existence, and when no superior right of third parties has intervened in the meantime. This equitable principle has been applied to freight to be earned in the future as well as other demands and to property potentially but not actually in existence at the time of the assignment. (*McCaffrey* v. *Woodin*, 65 N. Y. 459 ; *Coates* v. *Donnell*, 94 id. 177 ; 2 Story Eq. Juris. § 1055, etc.; *Fiero* v. *Mayor, etc.*, 2 Seld. 179 ; *Stover* v. *Ecclesheimer*, 3 Keyes, 620 ; *Douglass* v. *Russell*, 4 Simons, 524 ; *Curtis* v. *Auber*,

1 Jac. Walk. 526; *Langton* v. *Herton*, 1 Hare, 540; *Mitchell* v. *Winslow*, 2 Story, 630.)

It is apparent, therefore, that up to the time that the defendant seized the vessel and took her from the sheriff at Milwaukee, by virtue of its mortgage, the equity of the plaintiff and his right to the unearned freight was prior and superior to that of the defendant. The equity of the plaintiff under his mortgage was prior in point of time. He was the first to seize the vessel and assert his right of possession as against the defendant, and this right was not waived by contracting with the owner to make a special voyage for his benefit. He was the assignee of the freight and a party to the arrangement under which the vessel sailed upon the last trip, and the cargo was procured and loaded which produced the freight in controversy and, unless the parties changed places when the defendant took the vessel from the sheriff in Milwaukee and towed her to Buffalo, the plaintiff has the greater equity still. Suppose that the vessel had not been frozen in at Milwaukee but had completed the voyage, as was expected in the fall of the year 1875, and the defendant had seized her when within a few miles of Buffalo, or even in the harbor, before she had delivered her freight, and then had received the money and retained it as it has in the present case. Upon such facts the right of the plaintiff in equity to the freight moneys would be so manifest as scarcely to permit of argument, and yet the case now is not essentially different if we eliminate from its consideration two facts, not at all material, but which tend to confuse the question and possibly mislead the mind in the process of the investigation.

(1.) The defendant paid certain sums of money in Milwaukee which were charges or liens upon the vessel in order to obtain the possession, and it also incurred certain expenses in towing the vessel with her cargo to Buffalo. The plaintiff admits that the defendant should be made good for all moneys thus paid and expenses incurred. This concession cancels all equities arising from such facts and reduces the controversy to the balance of the fund, and in determining who is entitled

to that, the case stands in the same position as if the defendant took possession of the vessel, for the first time, after she had arrived with her cargo at Buffalo.

(2.) The holder of the first mortgage had the legal title to the vessel, and it may be admitted also that he had a prior right to the freight earned and payable after he elected to take possession, but that consideration is entitled to no weight whatever, for the plain reason that he never took possession, and the defendant can claim no right under his mortgage. The controversy is between the plaintiff and the defendant as the owners of the second and third mortgages, and the admitted superior right of Mr. Spaulding, as owner of the first mortgage, plays no part in the contest. The defendant must stand upon its own mortgage, and can derive no aid from the prior claims of others. The rights of the defendant and those of the first mortgagee must be kept distinct from each other in order to get a clear and correct view of the question. It is apparent from the findings of fact and law made by the learned referee that he has been misled by blending these rights together. He has found as a fact that the defendant took possession of the vessel, which was then in the custody of the sheriff, and received the freight, upon delivery of the cargo, with the knowledge, consent and approbation of Spaulding, who held the first mortgage, and from this fact he draws the legal conclusion that the possession of the defendant was the possession of Spaulding, and that as he could and did waive his superior right to the freight in favor of defendant, the plaintiff could not recover. The meaning of this finding of fact is perfectly evident from the record. Spaulding was the defendant's president. As such he, no doubt, had knowledge of the defendant's proceedings in Milwaukee to get possession of the vessel, and of her arrival at Buffalo and the receipt of the freight money by the defendant. As the principal officer of the defendant he was naturally interested in the collection of the debt, and, of course, approved of and consented to the proceedings. But there is no finding that the defendant or anyone else asserted any right under the first mortgage. On

the contrary, the finding is that the defendant took possession under its own mortgage. Spaulding could have taken possession under his prior mortgage, or he could have assigned it to the defendant, but he did neither. He simply held his security, undiminished by any payments, for three months after the defendant had received the moneys in question, and then he assigned it to the plaintiff, receiving from him the whole amount, principal and interest.

Of course neither he nor the defendant could assert any right to the freight moneys under this mortgage without applying them upon it. Then the plaintiff could not complain as the fund would have gone in reduction of a claim to which his own was subject and the transaction would accrue to his benefit. But Spaulding could not keep his own mortgage intact and at the same time, by his mere knowledge, consent or approbation, confer a right upon the defendant to receive the freight moneys, to the prejudice of the plaintiff, who, as between himself and the defendant, had the first claim and the superior equity. Until possession was taken under the first mortgage no right could be acquired in virtue of it to appropriate the earnings of the vessel, and hence Spaulding could confer no right to the freight moneys by consenting that defendant might take them, because he had no more right to them himself than an ordinary mortgagee of land, out of possession, to the rents and profits. The findings of the learned referee were, therefore, obviously insufficient to uphold any claim on the part of the defendant to the freight, based upon the first mortgage. The equities of the parties rest wholly upon their respective mortgages, and what was done under them. When all other considerations are eliminated from the case it will be seen that every fact upon which the plaintiff's claim rests is prior in point of time and this gives him the prior equity. As between him and the defendant he is in equity a first mortgagee, with all the rights and equities incident to such relation. (Pomeroy's Eq. Juris. § 413 *et seq.·;* Story's Eq. Juris. § 64; *Moore* v. *Prentiss Tool Company,* 133 N. Y. 144.)

The defendant's claim to the fund rests wholly upon the seizure of the vessel at Milwaukee under its mortgage. If it appeared that the plaintiff had abandoned her at that port and, with knowledge of the situation, had refused to redeem her from the claims that accrued there and which were liens, so as to enable her to complete the voyage and earn the freight, then the case would present some equitable features in favor of the defendant that do not exist now. It does not appear that the plaintiff knew of the detention of the vessel under state process, or that he abandoned her, or refused to pay the charges incurred while the vessel was in port. For aught that appears the plaintiff would have done in due time just what the defendant did, namely, pay the charges against the vessel and complete the voyage. The fact that the defendant had no notice of the assignment to the plaintiff is not important. An unknown equity is sometimes postponed in favor of one subsequent in time, but that is when it appears that the party has done some act, incurred some obligation, or made some advances that he would not have incurred or made had the true situation been disclosed to him. The record discloses nothing of that kind in favor of the defendant except, possibly, the advances made or expense incurred in completing the voyage, and when indemnified for this, out of the fund, any equity arising from that circumstance is satisfied.

The judgment of the General Term reversing that of the referee should, therefore, be affirmed, and judgment absolute ordered for the plaintiff, with costs, in all the courts.

EARL, J. (dissenting). A mortgage upon a vessel in this country is precisely like other chattel mortgages, except that it must be registered as required by the Federal law ; and it is not claimed by the counsel who argued this case that the mortgages in question are not to be treated just as if they were upon other chattels.

The facts are undisputed, and there is no real dispute about the principles of law. The dispute is as to the application to the facts of this case of principles of law recognized by both

parties and established beyond controversy by numerous decisions.

There were three chattel mortgages upon the vessel. The first was held by Spaulding, the second by the plaintiff and the third by the defendant. The first mortgage was in default when the other two were given.

A chattel mortgage carries the legal title to the property mortgaged to the mortgagee conditionally, and if the condition be not performed, the mortgagee at once upon the default becomes the absolute owner of the property at law. The only right then remaining to the mortgagor is an equity of redemption, a right which he can enforce only in equity. He has no title, legal or equitable, to the property. The mortgagee may permit him to remain in the lawful possession of the property; but his use and possession of the property are merely permissive, and the mortgagee may at any moment put an end to the same. If anyone wrongfully takes the property out of the possession of the mortgagor, the mortgagee can sue him in trover, trespass or replevin; and if anyone, without authority of legal process, seizes the property against the will of the mortgagor upon any pretense, he is in like manner liable to the mortgagee; and one interfering with the property left in the possession of the mortgagor by the mortgagee after default may be liable to the latter. If either of the subsequent mortgagees, the plaintiff or defendant, had seized and sold the vessel, he would have been a wrongdoer against the first mortgagee.

The mortgagee of a vessel has no lien on the freight she earns, or absolute right to the freight as an incident to his mortgage. He can obtain the freight by taking possession of the vessel (or doing something equivalent thereto), after default in the condition of the mortgage, at any time before the cargo has been fully discharged and the freight thus fully earned.

I do not understand that these principles of law are in any degree disputed by the learned counsel for the plaintiff, and they are substantially laid down in many cases, among which

are the following : *Butler* v. *Miller* (1 N. Y. 496); *Judson* v. *Easton* (58 id. 664) ; *Casserly* v. *Witherbee* (119 id. 522); *Leadbetter* v. *Leadbetter* (125 id. 190) ; *Moore* v. *Prentiss Tool Co.* (133 id. 144) ; *Essen* v. *Tarbell* (9 Cush. 407) ; *Ring* v. *Neal* (114 Mass. 111); *Pecker* v. *Silsby* (123 id. 108) ; *The Brig Wexford* (7 Fed. Rep. 674, 681) ; *Wilson* v. *Wilson* (L. R. [14 Eq.] 32) ; *Brown* v. *Turner* (L. R. [3 Ch. App.] 597); *Collins* v. *Collins* (11 Jur. [N. S.] 1) ; *Liverpool Marine Credit Co.* v. *Wilson* (L. R. [7 Ch. App.] 507) ; *Kersivile* v. *Bishop* (2 Cromp. & J. 529) ; *Rusder* v. *Pope* (L. R. [3 Ex.] 269).

The plaintiff does not base any substantial right here upon his mortgage. By virtue of that, taken after default in the first mortgage, he obtained no title, interest or property in the vessel. He did not, as against the first mortgagee, obtain even a lien on the vessel. All he got was the mortgagor's right of redemption. His mortgage was, however, of some further value to him against the mortgagor. As against her he could, after default in the payment of his mortgage, if the first mortgagee did not interfere, take possession of the vessel, and might thus intercept freight which she had earned, in the manner above stated ; and he could retain the possession of the vessel as against the defendant, the third mortgagee. But the seizure and possession of the vessel, in this case, by the plaintiff were of no value or importance, as there was no freight to intercept, and he could not sell her or make any profit out of her, having no right or title whatever to her. Therefore, when he surrendered the possession of the vessel, he parted with no valuable right. He then obtained from the mortgagor an assignment of the freight to be earned by the vessel upon the two round voyages to Chicago and back to Buffalo. His surrender of the possession of the vessel was absolute, and it was the inducement to and consideration for the assignment of the freight. The mortgagor resumed the possession of the vessel as she had her before. She was not to navigate her in any sense as the agent of the plaintiff, nor upon his responsibility, but she was to navigate her in her own right,

for her own benefit and at her own expense, except that she was to apply the freight earned, less the towage charges, in discharge of her debt to the plaintiff.

The position of the plaintiff, then, is as assignee of the freight, and only that. His position as assignee is not improved or strengthened by the fact that he also held the second mortgage. His rights, whatever they may be, are as such assignee, and his counsel does not contend that he has any other upon which to base his action. But here occurs the fallacy in his counsel's argument. What right had the mortgagor to assign the freight? She had no title to or property in the vessel. She could assign freight which she expected to earn, and if she earned it, it would belong to her assignee. But she could not in any way bind the vessel by such an assignment for freight which she never earned. Plaintiff's counsel does not take notice of the fact that all she owned as to the vessel at the time of the assignment was a mere equity of redemption, enforcible in equity. Whatever right, therefore, the plaintiff as assignee got, was the right, not to the freight which the vessel might earn, but only to the freight she might earn with the vessel and which would, thus, otherwise be payable to her.

But even if she had been the legal owner of the vessel at the time of the assignment of the freight to the plaintiff, it would make no difference. The unearned freight of a vessel may be assigned, in equity, and such an assignment is governed by the same rules which govern the transfer of anything not *in esse.* The assignment can have no positive operation to transfer *in presenti* property in a thing not *in esse;* but it operates by way of present contract to take effect and attach to the thing assigned when and as soon as it comes *in esse.* (*Mitchell* v. *Winslow,* 2 Story, 630, 639.) Suppose Mrs. Nims, after the assignment of the freight, had sold the vessel to a *bona fide* purchaser, and he had made the voyages and earned the freight ; or, suppose some mere wrongdoer had taken the vessel against her will and had earned the freight, could the plaintiff, in either case, have claimed the freight? Suppose the owner of a farm assigns the crops to be grown upon his

farm the ensuing year, and he afterwards sells his farm to a *bona fide* purchaser who sows and harvests the crops, can the assignee claim them? Or, suppose the owner of a farm, to secure an antecedent debt, or money presently advanced, assigns the proceeds of all his crops for the ensuing year, and the owner, after sowing the crops, is ejected from the farm, either by legal process or by a wrongdoer, and the person thus taking possession cares for the crops, harvests them, sells them, and thus obtains the proceeds, can the assignee maintain an action against him for such proceeds, claiming to be the legal owner thereof? All that is assigned or can be assigned in such cases is the freight or property to come *in esse* in the future, which, but for the assignment, would belong to the assignor. His assignment operates to take the property away from him then, and vest it in his assignee. But when he never brings the property *in esse*, there is nothing for his assignment to operate on.

Now what happened here? The vessel was taken to Chicago and then to Milwaukee where, after taking on a cargo, she was frozen in for the winter. Then toward spring she was attached for liens and claims against her, and the defendant found her in the possession of the sheriff under his seizure. It then knowing nothing about the claim of the plaintiff, using its mortgage, replevied the vessel from the sheriff and paid $538.76 to discharge the claims; and then it took possession of the vessel and navigated her to Buffalo, paying all the expenses, and discharged the cargo and received the freight before it knew anything about the claim of the plaintiff. It probably knew of her mortgage, but that gave the plaintiff no lien upon the freight. All this the defendant did by the consent, permission and authority of the first mortgagee, the general, absolute owner-at-law. The defendant was thus a wrongdoer to no one in taking possession of the vessel at Milwaukee. Its act was not a wrong to the plaintiff as mortgagee, because as such he had no title or property, legal or equitable, in the vessel, and no lien upon or right to the freight. It was not a wrong to him as assignee of the freight, because the

vessel had been lawfully taken out of the possession of the mortgagor, and her voyage thus broken up, and because, for reasons above stated, he acquired no right to unearned freight, and had no lien on or interest in the vessel for the freight. It was not a wrong to the owner, the first mortgagee, because he consented to and authorized it. Having taken possession of the vessel with the consent of the owner, its possession was lawful against the whole world. The mortgagor did not earn the freight, but the defendant earned it. We are not necessarily dealing here with the rights which the owner can give to an assignee of freight, but with the rights which one not having an atom of ownership or property in the vessel can give. We are not dealing with freight earned by the assignor, but with freight earned by the defendant. Under such circumstances there is absolutely no authority — absolutely no principle which sanctions the maintenance of this action by the plaintiff as assignee of the freight. He could not even have maintained the action against a wrongdoer who had seized and navigated the vessel to Buffalo and had thus earned the freight. Much less can he maintain it against one who had the consent and sanction of the true owner.

It is probably true that the first mortgagee by expressly assenting to and countenancing the action of the defendant in taking the vessel and the freight, became just as accountable for the freight in an action for redemption from his mortgage as if he had actually himself received the freight. (*Liverpool Marine Credit Co.* v. *Wilson, supra.*) But he could be made liable for it only in an equitable action for redemption brought against him by the mortgagor or one of the subsequent mortgagees. In such an action he could be compelled to account for all the profits he had permitted and allowed anyone else to make. But no action whatever can be maintained against the defendant for the freight because its receipt of it was rightful against the whole world; and certainly a legal action like this cannot be maintained against it by the plaintiff, claiming to be the legal owner of the freight.

Much has been said in this case about the superior equity of the plaintiff to this freight. Upon the trial he planted himself upon his legal rights as assignee, and no proof was given as to the equities, and there are no findings of fact or law as to the equities. There are no findings from which we can know or determine anything except the legal rights of the parties. As we have shown, plaintiff's mortgage gave him no equitable right to the freight, and he obtained no equitable right to it as assignee. Where then does his equity come from? What equity has he against the defendant which took the vessel at Milwaukee, paid the charges upon which she had been seized and was detained, navigated her to Buffalo at its own risk and expense and thus earned the freight? If we were willing to dispose of this case upon mere humanitarian views, guided by our feelings of beneficence, we cannot even determine upon this record which of the two parties will suffer or lose the most by being deprived of this freight. All we have showing the relations and equities between these parties is the three mortgages, and their amounts, the assignment and earning of the freight, and the fact that the plaintiff finally took an assignment of the first mortgage paying the full amount due thereon. For aught that appears in this record, he may have full security for all that is due to him from Mrs. Nims. We know nothing about the equities and we must dispose of this case upon the facts as they appear, applying to them the rules of law, mostly elementary, which we are bound to administer.

The order of the General Term should be reversed, and the judgment entered upon the report of the referee affirmed, with costs.

All concur with O'Brien, J., except Earl and Peckham, JJ., who dissent.

Judgment affirmed.