self, sought out and went to the superintendent of the poor with the covert intention of defrauding the city.

If, then, there is no evidence that the deceased obtained help from the charity department of the city by any fraudulent act which has been proved to have been committed by her and which induced the city to grant her charity, then, under the decision in the case of City of Albany v. McNamara, 117 N. Y. 173, the claimant has not established a claim against the estate and cannot recover.

Under what arrangement the deceased remained in the county house for sixteen years, when her commitment was only temporary, has not been shown, nor the time when she was cured of the cause of dependence and should have been discharged. The Statute of Limitations which has been raised might in any event cut off all claim under the original commitment.

Claim disallowed.

THE INDEPENDENT BREWING COMPANY, Appellant, *v.* JOHN J. DURSTON and WALTER BENCH, Respondents.

(County Court, Cayuga County, July, 1907.)

Chattel mortgage: Recordation — Original filing — Notice: Payment and discharge — Discharge — Merger: What constitutes default — Waiver of forfeiture.

Replevin — Parties, pleading and evidence — Admissibility of evidence.

By accepting a chattel mortgage with a covenant that the property is free from liens except a certain prior mortgage particularly described, the second mortgage is deemed to have had actual notice of the prior mortgage and all its provisions.

A transfer of chattels by the mortgagor to the holder of the first mortgage upon them, in terms subject to the indebtedness secured by the mortgage, evidences the intention of the parties that no merger should be effected, and, consequently, no merger resulted.

Though after default the mortgagee accepts from the person then primarily liable to perform the conditions of the mortgage an agreement modifying its terms, the failure of such person to perform the conditions as modified is a fresh default.

Whether the acceptance of such an agreement by the mortgagee waives the previous default and reinvests the mortgagor or his assigns with the title to the property, *quære*.

In an action brought by the first mortgagee against the second mortgagee to recover the chattels, the exclusion of the first mortgage which contained a clause allowing the mortgagee to take possession at any time, when offered in evidence by the plaintiff, was error.

APPEAL from a judgment of the City Court of the city of Auburn, N. Y.

Oscar Tryon, for appellant.

Frank C. Cushing and Frank E. Cady, for respondents.

GREENFIELD, J.  The defendant Durston, a second mortgagee of personal property, claiming under a mortgage dated August 1, 1905, and expressly made subject to a prior mortgage held by plaintiff " upon which there remains unpaid the sum of two hundred and ten dollars," has been allowed by the judgment appealed from to seize upon the property covered by plaintiff's mortgage, while the same was contained in plaintiff's building, and retain it as his own, although the plaintiff's mortgage was long past due and the property, at the time of the commencement of the action, had been seized upon by a deputy sheriff hostile to the plaintiff.  This statement calls for a reversal of the judgment, unless, notwithstanding such situation, a good reason exists why the judgment should stand.  That the facts above recited appeared in orderly sequence from plaintiff's witnesses cannot be affirmed.  Indeed, most of such facts were brought out by defendant on cross-examination, and by his own exhibits and witnesses, and that necessarily, in order to develop his position upon the question of estoppel, hereafter adverted to.

Defendant introduced in evidence his mortgage, dated August 1, 1905, wherein the mortgagor warrants that the property is free from liens, " except as to a chattel mortgage covering a portion of the within mentioned property held by the Independent Brewing Company, upon which there remains unpaid the sum of $210."  Several times during the

trial, Anton J. Lauer, the secretary and treasurer of the plaintiff, testified that plaintiff had a · mortgage upon the property in question; and the defendant's attorney was persistent in his inquiries as to how much was " due " thereon and he finally settled upon about the sum of $100.

Before the defendant would accept his mortgage, he went to see Lauer; and Lauer told him about the plaintiff's mortgage and asserted its rights as first mortgagee.

By accepting a mortgage in terms second to plaintiff, the defendant Durston is, of course, deemed to have had actual notice of plaintiff's mortgage and all the provisions thereof. 2 Coppey Chat. Mort. 1283.   On July 10, 1905, Charles W. Moore, the mortgagor in plaintiff's mortgage, executed to plaintiff his bill of sale of the mortgaged property, but wherein it was provided that the sale was " subject to an indebtedness of $210, secured by chattel mortgage held by the Independent Brewing Company;" and it is claimed by plaintiff that the object of this clause was to evidence the intention of the parties that a merger was not intended. Certainly, if that transfer was " subject " to the mortgage, it could have no effect upon the mortgage.   From that time on, every person who has been in possession of or made claim to the mortgaged. property, down to and including the defendant Durston, has recognized the existence and validity of the plaintiff's mortgage, and that in express terms.   The intention is clear that no merger was intended and, if so, none took place.   Bascom v. Smith, 34 N. Y. 320.

The defendant Durston's contention is that the plaintiff then became the owner of the property and the mortgage ceased to exist as such; that, when plaintiff witnessed without objection the transfer, by bill of sale, of the property in dispute, from C. W. Moore (plaintiff's mortgagor), to A. C. Moore (Durston's mortgagor), and knowing at the same time that Durston was about to advance money thereon to A. C. Moore, it became and was forever estopped from denying that A. C. Moore had title to the property and could give a good mortgage thereon, and that in any event the mortgage debt was not past due, nor was any person, who was liable for the mortgage debt, in default.   Certain memoran-

dum agreements were put in evidence by defendants between the two Moores and Carroll, the person in possession of the saloon at the commencement of the action, and the plaintiff, from which it is claimed that the default in payment of the plaintiff's debt was waived, and the time of payment extended. The first one (with C. W. Moore) states that the mortgage is to remain "indefinite." A. C. Moore (Durston's mortgagor) says: "I assume C. W. Moore c. mtg. $210 and receive 50¢ credit on each barrel paid above $5.00 on the mtg. a/c providing I keep up payments promptly of said 50¢ additional payments." Carroll assumed the same obligation incidental to an agreement to rent plaintiff's premises and sell its ale and beer, the whole agreement being conditional upon his paying forty dollars per month rent in advance and for which he was in default at the time this action was instituted. If the agreement to accept payment as specified for an indefinite time was a waiver of the default and reinvested the mortgagor or his assigns with the title of the property, which is doubtful, the failure of Carroll to keep his agreement was certainly a new default. Indeed the act of the defendant Durston, in seizing the property, turning Carroll out of the saloon and locking it up, forced Carroll to default on his last agreement; and, whatever rights Durston or his mortgagor may have acquired by the alleged estoppel, they were bound at their peril to see to it that no new default took place.

There would seem to be no good reason why the plaintiff should not have succeeded upon the merits.

If, upon the proof as it stood, the judgment is right, then the inquiry arises, did the trial court err in refusing to admit plaintiff's mortgage in evidence?

After plaintiff's secretary had testified that they had a form of mortgage which they used in their business, he was asked by plaintiff's counsel: "Q. I ask you if that paper is the form of mortgage which the Independent Brewing Company uses in that business? [Objected to as irrelevant and immaterial.] By the Court: *Is it the mortgage executed in this case?* A. Yes, sir. By the Court: I don't see as it's material. As plaintiff's complaint then stood he

claimed to be the owner of the property in dispute and, if he held a past due mortgage thereon, he was such owner." Kimball v. Farmers & Mechanics' Bank, 138 N. Y. 500.

The complaint was afterward amended so as to claim in terms the property under the mortgage, and the mortgage was again offered in evidence and rejected. The only ground urged against its reception was that it was irrelevant and immaterial. It was both relevant and material. The recitation thereof in Durston's mortgage alone made it so.

It cannot be said that, in view of the fact that it already appeared in a general way by statements in the various exhibits and from witnesses that such a mortgage was outstanding, no harm was done by its exclusion. The offer of the paper was in connection with a statement that it contained a clause making it a security for all moneys advanced beyond the original consideration; and, as Carroll and the two Moores assumed the mortgage, it was binding upon them.

Again, an inspection of the paper offered shows that it contains a clause allowing the plaintiff to take possession of the mortgaged property at any time, before or after a default in payment. This clause should have been received and considered by the court below, and its exclusion is thought to be error.

The judgment should be reversed, with costs; and it is so ordered.

Judgment reversed, with costs.