## THE E. V. MUNDY, etc.

*(Circuit Court, E. D. Michigan. 1884.)*

ADMIRALTY JURISDICTION — NON-MARITIME CLAIMS — DISTRIBUTION OF SURPLUS FUNDS.

Where a vessel has been attached and sold under a libel, and there is a surplus fund after payment of the claim in the registry of the court, it has power to distribute such surplus fund to all those who can show a vested interest therein, in the order of their several priorities, no matter how their claims originated.

In Admiralty.

MATTHEWS, Justice.   This is an appeal in admiralty from a decree of the district court dismissing the libel of the appellants.   It appears from the record that on December 24, 1883, the appellants, intervening for their interest under a libel theretofore filed by Knowlton to recover wages as a seaman, filed their libel asserting a lien against the vessel to the amount of $750, alleged to be due for materials and labor used in its necessary repair while lying at the port of West Bay City.   To this libel William H. Miller, the appellee, filed an answer, as claimant under a mortgage executed and delivered by the owner, June 4, 1883, to secure a debt of $1,400.   The vessel, having been attached under process issued upon the original libel of Knowlton, was sold, and the proceeds of sale having been applied to the payment of prior maritime liens, there remains in the registry a balance, which is the subject of this controversy.

The proof in the cause clearly established that the materials and labor advanced by the appellants were used, not in the repair, but in the original construction, of the tug.   This variance is now insisted upon as fatal to the appeal.   If the objection had been taken in the district court, the libelant would have been entitled to amend, so as to conform his pleadings to his proof, provided the case made upon the evidence entitled him to a decree; and the same rule, in furtherance of substantial justice, should be applied here.   It becomes proper in that view to consider the case upon its merits.

It is admitted that there is no maritime lien for materials and labor used in the original construction of the vessel, and also that a lien is given therefor by a statute of Michigan.   I think that the appellants are entitled to that statutory lien for the amount of their claim, and that under the laws of Michigan it is entitled to priority over that of the appellee as mortgagee.   It is urged, however, that the libel of the appellants was rightly dismissed for want of jurisdiction in the district court, as a court of admiralty, to entertain it.   If the appellants had filed a libel for such a cause as an original proceeding, and sought thereby to subject the vessel to the jurisdiction of the admiralty court, it is not denied but that it should have been dismissed for want of jurisdiction, on the ground that the contract

for construction is not maritime in its nature. But the libel was not so filed. On the contrary, it was filed as an intervention in a proceeding previously commenced, under which the district court had rightfully acquired jurisdiction over and possession of the vessel as a court of admiralty. The vessel has been sold; the proceeds have been appropriated to the payment of maritime liens; there is a surplus remaining in the registry; there are before the court two claimants, neither of whom have a claim originally enforceable in admiralty,—one claiming title by virtue of a lien given by the local law, and superior in equity and at law to that of the other, who claims from assignment from the owner by way of mortgage. The jurisdiction of the district court as an admiralty court, in one sense, may be said to be exhausted and at an end, but it is still in possession of a fund arising by the exercise of that jurisdiction. Is not the right and power of disposing of that fund necessarily incident to its jurisdiction as an admiralty court? It must do something with the fund; it is absurd to suppose that it cannot. What else can it do but ascertain to whom among several claimants it belongs, according to principles of equity, and award it accordingly; or, if this presents complications beyond the convenient extent of its powers, then to direct a litigation elsewhere between the parties, securing the fund to whomsoever shall ultimately appear to be entitled? Such was the principle announced and acted on in the case of *The Guiding Star*, 18 FED. REP. 263. A reconsideration of it in this case has not weakened my conviction as to its soundness. This principle is the sole foundation for the forty-third admiralty rule, and is explained and justified in the opinion of the supreme court in the case of *The Lottawanna*, 21 Wall. 558–582. It is there said:

"The court has power to distribute surplus proceeds to all those who can show vested interest therein, in the order of their several priorities, no matter how their claims originated. *Schuchardt* v. *Babbidge*, 19 How. 239. The propriety of such a distribution in the admiralty has been questioned, on the ground that the court would thereby draw to itself equity jurisdiction. *The Neptune*, 3 Knapp, Privy Conn. 111. But it is a wholesome jurisdiction, very commonly exercised by nearly all superior courts, to distribute a fund rightfully in its possession to those who are legally entitled to it; and there is no sound reason why admiralty courts should not do the same. If a case should be so complicated as to require the interposition of a court of equity, the district court could refuse to act, and refer the parties to a more competent tribunal."

It follows that the decree of the district court dismissing the appellants' libel was erroneous, and must be reversed, with costs. It is accordingly so ordered, and a decree will be rendered in favor of the appellants, appropriating the fund in the registry, so far as may be necessary, to the payment of their claim, and the balance, if any, to the appellees.