MILLER *et al. v.* THE PEERLESS, (WILLIAMS *et al.*, Intervenors.)

*(Circuit Court, S. D. Florida.* March 20, 1891.)

ADMIRALTY—SURPLUS—BREACH OF CONTRACT—RULE 41.

The mortgagor of a vessel gave the mortgagee an absolute bill of sale upon condition that the latter should pay off the outstanding indebtedness, and that the mortgagor retain the use and control of the vessel for a year, within which time he might sell it, and pay the mortgage debt and interest. The mortgagee failed to pay the debts, and the vessel was sold under maritime liens, leaving a surplus in the registry. Both mortgagor and mortgagee intervened *pro interesse suo*, each claiming the surplus. *Held*, that the right of the mortgagor was in no sense a *jus in re* in respect of the surplus, but was simply a claim for damages against the mortgagee for failing to pay the vessel's indebtedness, of which admiralty has no jurisdiction, even under rule 41, authorizing a distribution of a surplus upon a summary hearing, and in accordance with the principles of equity, the fund must be awarded to the mortgagee, leaving the owner to his action at law.

In Admiralty. John C. Williams and William Harding intervenors *pro interesse suo*, claiming remnant.

*Barron Philips*, for intervenor Williams.
*Knight & Wall*, for intervenor Harding.

PARDEE, J. The libelants on a maritime lien caused the schooner Peerless to be libeled, condemned, and sold. After paying the amount of their claims and costs, there is a surplus remaining in the registry of the court. John C. Williams intervenes for this surplus, alleging himself to be the holder of a mortgage of the said schooner granted by said William Harding, then owner, which mortgage was afterwards by agreement converted into a bill of sale unconditional in terms. William Harding intervenes, denying the right of the said Williams to the surplus in the hands of the court either as mortgagee or owner of the said schooner Peerless. He alleges that the said mortgage has never been foreclosed, and the equities under it never have been determined; that the bill of sale was obtained by undue means, amounting to fraud; that the said Williams is, by reason of violation of his agreements, and of his course in causing and procuring the said schooner Peerless to be libeled and sold, and in depriving him, the said owner, of the use and possession of the said schooner, in violation of express contract thereunto made, indebted to him in a larger sum than the amount in the registry of the court; and praying as follows:

"That the petition of said Williams be dismissed, because the same is an intervention filed for the purpose of obtaining the money paid into the registry of the court, and based on a mortgage which has not been foreclosed, and in which the rights and equities of the parties to said mortgage have not been determined, nor can be legally entertained and determined by this court. But said William Harding further prays that if it be so that your honor shall hold that it is right and proper in the law to entertain the claim of said Williams for said mortgage indebtedness without a suit for the foreclosure first being had and determined, and the equitable ascertainment of the amount due said Williams, if any, by proof, then the said Harding be allowed the sum of one thousand three hundred and sixty-eight dollars due from said John C. Williams to him for detention and use of said vessel, the statement

of which is hereto attached, marked 'Exhibit A;' and that the same be decreed, and an order of court be granted, requiring said sum to be paid to said Harding out of the money realized from the sale of said schooner Peerless, after payment of the claim of Miller & Henderson, with the costs, etc., paid into the registry of the court."

The conceded facts are that Harding was the owner of the schooner Peerless, and granted a mortgage to Williams to secure the payment of a promissory note of $700, bearing interest at the rate of 15 per cent. per annum, payable semi-annually. The mortgage contained many stipulations with regard to the prompt payment of interest and the treatment of the mortgaged property, as to keeping the same in repair, out of debt, insured, within the country, etc. The stipulations of the mortgage, particularly with regard to the payment of interest, not being complied with, Williams insisted upon foreclosure. Thereupon the parties agreed that Harding should execute a bill of sale to Williams of the vessel, which was done.

The disputed facts are with reference to the terms of the agreement upon which the bill of sale was executed. Williams claims that the agreement was that he (Williams) was to pay off and satisfy the indebtedness against the vessel, and that, if Harding could obtain a purchaser for said vessel at a sum that would pay off and satisfy whatever amount he (Williams) should have paid on the said vessel, together with the indebtedness as expressed in said mortgage, then Harding should have all of the amount of money in excess of said sum or sums of money. Harding claims that the agreement was that, in consideration of his executing the bill of sale, he was still to hold possession of the vessel for 12 months, with the privilege of using the vessel for that length of time; with the further express agreement that said Williams should pay all the indebtedness against said vessel to that date, and that Harding should have the privilege of selling said vessel within 12 months, and paying off said mortgage debt and interest from the proceeds. If the vessel should not be sold within 12 months, Harding was to forfeit further claim thereto. The forty-first admiralty rule provides—

"That any person having an interest in any proceeds in the registry of the court shall have a right by petition and summary proceeding to intervene *pro interesse suo* for a delivery thereof to him; and upon due notice to the adverse parties, if any, the court shall and may proceed summarily to hear and decide thereon, and to decree therein according to law and justice."

Mr. Justice MATTHEWS, in the case of *The E. V. Mundy*, 22 Fed. Rep. 173, in considering the jurisdiction of the district court as to the disposition of surplus, says:

"The jurisdiction of the district court as an admiralty court, in one sense, may be said to be exhausted and at an end; but it is still in possession of a fund arising by the exercise of that jurisdiction. Is not the right and power of disposing of that fund necessarily incident to its jurisdiction as an admiralty court? It must do something with the fund; it is absurd to suppose that it cannot. What else can it do but ascertain to whom among several claimants it belongs, according to principles of equity, and award it accordingly; or, if this presents complications beyond the convenient extent of

its powers, then to direct a litigation elsewhere between the parties, securing the fund to whomsoever shall ultimately appear to be entitled? Such was the principle announced and acted on in the case of *The Guiding Star*, 18 Fed. Rep. 263. A reconsideration of it in this case has not weakened my conviction as to its soundness. This principle is the sole foundation for the forty-third admiralty rule, and is .explained and justified in the opinion of the supreme court in the case of *The Lottawanna*, 21 Wall. 558–582. It is there said: ' The court has power to distribute surplus proceeds to all those who can show vested interest therein, in the order of their several priorities, no matter how their claims originated. *Schuchardt* v. *Babbidge*, 19 How. 239. The propriety of such a distribution in the admiralty has been questioned, on the ground that the court would thereby draw to itself equity jurisdiction. *The Neptune*, 3 Knapp, 111. But it is a wholesome jurisdiction, very commonly exercised by nearly all superior courts, to distribute a fund rightfully in its possession to those who are legally entitled to it; and there is no sound reason why admiralty courts should not do the same. If a case should be so complicated as to require the interposition of a court of equity, the district court could refuse to act, and refer the parties to a more competent tribunal.' "

Taking the law to be as laid down by the learned justice, and supported as it is by the authorities cited, there can be no doubt about the jurisdiction of the court in this cause to determine as to the proper disposition of the surplus in the registry. The jurisdiction, however, should extend no further than to determine between claimants who have a right to or a lien on the *res*. Controversies between the claimants involving breaches of contract, or even equities, that do not amount to a specific right in or to the *res*, should not be drawn within the jurisdiction. All this seems clear from the nature of the case, and from the admiralty rule, which requires the court to proceed summarily.

With these views as to jurisdiction, it is not considered that the questions submitted are so complicated as to require the interposition of a court of equity, and this court, as required by the forty-first admiralty rule, can proceed summarily thereon, and decree according to law and justice. In so proceeding, it seems unnecessary to determine as to the disputed facts in the case. The claim of Williams, whether based on the mortgage or the bill of sale, is undisputed. Based on either, it constitutes a lien, inferior, of course, to all maritime liens, for the amount thereof on the surplus funds in the registry of the court. If the bill of sale is ignored as void for fraud, and Williams is remitted to his right solely under the mortgage, his claim and lien on the funds is of a higher order, and has priority over a claim of the owner. If the bill of sale is taken as the measure of Williams' right, then he stands before the court entitled to the surplus proceeds after prior liens are satisfied. The claim of Harding, taking it in its most favorable aspect, to-wit, that, under his contract with Williams, Williams was to pay the outstanding indebtedness of the schooner, and Harding was to have the use and control of the vessel for one year, of which he has been deprived by the neglect of Williams to pay the debts, and the consequent forced sale of the ship under admiralty process, is and can be nothing more than a claim for damages arising out of a breach of duty and of contract. Such claim is not of such a character as to divest the ownership of Williams, nor does

it in any way constitute a lien in itself. There is no element in such a claim of a *jus in re*.

Under this state of the case, it seems to be the duty of the court to award the surplus fund in the registry of the court (conceded not to be sufficient to satisfy the demands of either contestant) to the party who holds the undisputed mortgage right, leaving to the contestant any and all rights that he may have to pursue his claim for damages in any court of competent jurisdiction. The accompanying decree will be entered.