THE ADVANCE.

GRAY v. PROCEEDS OF THE ADVANCE et al.

(District Court, S. D. New York. June 11, 1894.)

ADMIRALTY JURISDICTION — REMNANTS AND SURPLUS — MORTGAGEE'S PETITION —RECEIVER.

Upon a default in a mortgage, before the appointment of a receiver, a mortgagee of a vessel has such a vested legal interest in the vessel mortgaged as entitles him to maintain a petition in admiralty for the remnants and surplus after a sale, as against the receiver of the shipowner seeking to draw all litigation concerning the mortgagees into the state court.

In Admiralty. Claims of surplus. Mortgagee and receiver.

Stetson, Tracy, Jennings & Russell and Mr. Van Sinderin, for the receiver.

Carter & Ladyard, E. L. Baylies, and W. W. Goodrich, for Atlantic Trust Co.

BROWN, District Judge. Upon various libels for the enforcement of maritime liens against the steamships Advance, Allianca, and Vigilancia, heretofore belonging to the United States & Brazil Mail Steamship Company, those vessels have been sold under process of this court, and considerable sums still remain in the registry as the proceeds of each. Besides the maritime claims already paid from the funds, there are various other maritime liens in course of adjudication. A surplus being anticipated after the payment of all the maritime claims, the Atlantic Trust Company, as mortgagee in trust for bondholders to the amount of $1,250,000, has intervened to resist any improper demands on the funds, claiming that any such surplus should be paid to it as mortgagee. The receiver of the steamship company, first appointed temporarily on March 18, 1893, and made permanent receiver on March 6, 1894, has also intervened by petition to procure payment of such surplus to himself, and contends that the mortgagee can only seek the application of the funds to the mortgage debt, by proceedings in the state court, and that this court has no jurisdiction of the mortgagee's application as against the receiver, or to determine any questions the receiver may choose to raise as to the validity of the mortgage, or the amount due on it. The trust company has answered the receiver's petitions, and insists upon its superior right to such proceeds by virtue of its mortgage.

In behalf of the receiver it is urged, not only that the mortgagee

has no maritime lien, but that it acquired no legal title to the res, until after the appointment of the receiver on the 18th of March, 1893, because the election of the bondholders to claim a default in the whole mortgage for the nonpayment of any interest on and after January 1, 1892, according to the terms of the mortgage, was not asserted until the 23d of March, 1893, after the receiver was appointed, and not made known to the trust company until the 30th.

But even if the mortgagee had not acquired any legal title until the election referred to, that circumstance would not, I think, be material here; for the mortgage long antedates the receiver's appointment, and the mortgagee's lien dates from the execution and delivery of the mortgage. Through default in the payment of interest, and under the conditions of the mortgage, the conveyance of the vessels, which was originally conditional, ripened into an absolute legal title a few days after the receiver's appointment, and long before the intervention in this action was filed. The mortgagee stands upon its title as now presented, the receiver never having acquired possession of the vessels, and no rights, except subject to the mortgagee's prior claims.

In fact, however, the mortgagee held a conditional legal title from the time the mortgage was executed and delivered. A mortgage of chattels in this respect differs from a mortgage of real estate, under the law of this state. A mortgage of chattels is in law and in fact what its terms naturally import, viz., a present conveyance of the legal title upon condition; and that title becomes absolute at law on default of payment according to the terms of the mortgage. 4 Kent, Comm. *138. The relation of the parties to the title is in this respect accurately stated by Earl, J., in Kimball v. Bank, 138 N. Y. 511, 34 N. E. 337. The form of expression used at page 504, 138 N. Y., and page 337, 34 N. E. in the same case, viz., that "the legal title passed * * * upon default of the mortgagor to pay the debt when due," refers to the absolute legal title; it does not mean that the legal title did not previously pass conditionally, which would be quite inaccurate.

The absolute legal title having thus become vested in the trust company, as mortgagee, subject only to an equitable right of redemption on the part of the steamship company, or its receiver, there is no reason why the mortgagee's title to the remnants and surplus should not be recognized by a court of admiralty as much as the title of the mortgagor, or of any vendee of the mortgagor, had he sold the res meantime; nor should the right of either mortgagee or vendee be prejudiced by the mere circumstance that the mortgagor, or vendor, or his representative, may choose to deny his transfer, or its validity; unless the court, in its discretion, should for sufficient reason direct the parties to litigate their disputes elsewhere.

I do not find any new question in this case. The practice of courts of admiralty in this country, in disposing of the surplus remaining after a sale of property and payment of maritime liens, has been long settled. The distribution is not restricted to those who claim

under an absolute legal title alone, like an owner, a vendee, or a mortgagee after default; all that is required is, that the petitioner shall show some specific vested interest in the fund, or in the res from which it was derived. A creditor at large, or a judgment creditor merely, without a lien, has no such interest; and he therefore cannot be heard to make a claim to the fund as against the legal owner. But where any vested legal interest, or lien, is shown, howsoever it was created, that right is universally recognized in this country, and, so far as I know, without a single dissenting adjudication. This rule was directly affirmed in the supreme court in the case of The Lottawanna, 21 Wall. 558, 582, where Mr. Justice Bradley, upon this point, says:

"The court has power to distribute surplus to all those who can show a vested interest therein in the order of their several priorities, no matter how their claims originated. * * * It is a wholesome jurisdiction very commonly exercised by nearly all superior courts, to distribute a fund rightfully in its possession to those who are legally entitled to it; and there is no sound reason why admiralty courts should not do the same. If a case should be so complicated as to require the interposition of a court of equity, the district court could refuse to act and refer the parties to a more competent tribunal."

The claim in that case was made by a mortgagee, as in this case. The same subject was considered, and the same rule followed, by Mr. Justice Matthews, in the cases of The Guiding Star, 18 Fed. 263, and The E. V. Mundy, 22 Fed. 173; by Mr. Justice Jackson, in The Balize, 52 Fed. 414; and by other judges in The Wyoming, 37 Fed. 543; The Wexford, 7 Fed. 674, 684; and The Peerless, 45 Fed. 491. In the latter case, the contention was between the mortgagor and the mortgagee, and the superior right of the mortgagee sustained. In the recent case of The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, this rule is again reaffirmed. Though the court of admiralty, it is said, has no jurisdiction of a libel to foreclose a mortgage or to assert the title or right of possession under it, the court "has jurisdiction after the vessel has been sold by its order and the proceeds have been paid into the registry, to pass upon the claim of the mortgagee, as of any other person, to the fund; and to determine the priority of the various claims, upon petitions such as were filed by the mortgagees and the material men in this case."

The passage cited to the contrary from Benedict's Admiralty Practice (3d Ed. § 592; 2d Ed. § 562) is ambiguous, and liable to convey an erroneous impression. At the end of the paragraph should be added the statement, that any specific vested lien upon the res, or upon the fund derived from it, is enforceable in the admiralty against the remnants and surplus, whether such interest was a maritime lien or not. The superior right of the mortgagee is, therefore, sustained. Nothing has been presented to the court showing any such complications as would make needful an independent action in the state tribunals in order to determine the mortgagee's claims. Any evidence touching the validity of the mortgage, or the amount due upon it, can be presented, if desired, to the commissioner before whom other claimants upon the same fund are proceeding with the testimony.