## In re FORSYTH.

(District Court, N. D. California. January 13, 1897.)

### No. 11,302.

1. MANDAMUS — JURISDICTION OF FEDERAL COURTS — CONTROL OF CLERK — FUND IN COURT.

The United States district court entered a decree, upon a libel in admiralty, directing the clerk of that court to pay to a receiver of the property of the claimant of the libeled vessel, appointed by a court of another state, the surplus proceeds of the sale of the vessel, then in the registry of the district court, after payment of all costs, etc. Pursuant to such decree, the judge and clerk of the court drew a check for such surplus proceeds to the order of the receiver, but while said check was in the hands of the clerk, before it had been mailed, an execution, issued from a court of the state in which the district court sat, upon a judgment against the claimant, was served by the sheriff upon the clerk of the district court, with a notice that all debts, credits, and personal property of the claimant in the hands of the clerk were attached. Thereafter the state court appointed a receiver of the property of the claimant in supplementary proceedings taken upon said judgment, and such receiver applied to the district court for a writ of mandamus directing the clerk to deliver to him the check for the surplus proceeds of the vessel. *Held*, that the proceeding was an original one, and the district court had no power to issue a writ of mandamus, but by virtue of its inherent power to control its own officers it might direct the action of the clerk.

2. FUND IN COURT—CUSTODY OF CLERK—ATTACHMENT AND GARNISHMENT.

*Held*, further, that the clerk was holding the check, not as an individual, but in his capacity as clerk, the fund being in the custody of the court itself until actually delivered to the receiver, to whom the decree had ordered it paid, and the check and the fund on which it was drawn were not subject to attachment or garnishment under process of another court.

3. SAME—PROCEEDS IN ADMIRALTY—JUDGMENT OF STATE COURT.

*Held*, further, that the judgment of the state court constituted no claim upon the proceeds of the sale of the vessel. Chandler v. The Willamette Valley, 76 Fed. 838, reaffirmed.

Application for a writ of mandamus to command and direct the clerk of the court to deliver to A. C. Forsyth, receiver of the Oregon Pacific Railroad Company, appointed by one of the courts of this state, a check drawn upon a fund in the registry of this court, being the surplus proceeds remaining from the sale of the steamship Willamette Valley, the property of the Oregon Pacific Railroad Company, after satisfying certain maritime liens pending in this court against her. Application denied.

Wal. J. Tuska and Walter G. Holmes, for petitioner, A. C. Forsyth.

Page, McCutchen & Eells, for the receiver of the Oregon Pac. R. Co.

MORROW, District Judge. In the case of Chandler v. The Willamette Valley (No. 10,862), a decree was entered in this court on June 9, 1896 (76 Fed. 838), directing the clerk, Southard Hoffman, to

pay to Charles Clark, receiver of the Oregon Pacific Railroad Company, claimant of the steamship Willamette Valley, and the surplus proceeds derived from its sale, or to his proctors, after payment of all costs incurred in the case, the remnant of proceeds in the registry of this court, amounting to the sum of $23,524.45. After the entry of this decree, the court, upon application, granted stays of proceeding from time to time until September 27, 1896, and, on September 28, 1896, pursuant to the decree and in accordance with the rules and practice of the court in that behalf, the clerk and judge of the court signed two checks, drawn on the assistant treasurer of the United States at San Francisco, in said case,—one payable to Charles Clark, receiver of the Oregon Pacific Railroad Company, for the sum of $19,918.29; and the other in favor of Messrs. Page & Eells, proctors, for the sum of $3,606.16. The check in favor of Charles Clark, receiver, was inclosed by the clerk in an envelope addressed to Charles Clark at Corvallis, Or., but before it was deposited in the mail the sheriff of the city and county of San Francisco left with the clerk of this court a copy of a writ of execution issued out of the superior court of the city and county of San Francisco in an action pending in that court, wherein one W. A. Swinerton was plaintiff and the Oregon Pacific Railroad Company was defendant, and wherein a judgment had been rendered in favor of the plaintiff and against the Oregon Pacific Railroad Company for the sum of $15,363.78 and $1,115.75 costs. With the copy of the writ of execution, the sheriff served a notice on the clerk that the debts owing by him to the said Oregon Pacific Railroad Company and the credits and other personal property in his possession and under his control belonging to the said Oregon Pacific Railroad Company were attached in pursuance of such writ. On September 29, 1896, a like service of a copy of the writ of execution and notice was made upon Charles Page of the law firm of Page & Eells. On September 28, 1896, Hon. J. M. Seawell, one of the judges of the superior court of the city and county of San Francisco, made an order in the case of Swinerton v. Oregon Pac. R. Co. in proceedings supplementary to execution, requiring Southard Hoffman, the clerk of this court, and Charles Page, to be and appear before him on the 29th of September, 1896, and answer concerning property of the said Oregon Pacific Railroad Company in their hands, custody, or control, and concerning moneys owing by them to the said Oregon Pacific Railroad Company in an amount exceeding the sum of $50. The examination was continued until October 2, 1896, when such proceedings were had that on October 14, 1896, Judge Seawell rendered his decision in the matter, and made the following order:

"In the Superior Court of the City and County of San Francisco, State of California.

"W. A. Swinerton vs. Oregon Pacific Railroad Company.

"In the foregoing entitled action an order having been duly made by the Hon. J. M. Seawell, a judge of the superior court of the city and county of San Francisco, state of California, on the 28th day of September, 1896, in proceedings supplementary to the execution issued upon the judgment theretofore on the 4th day of June, 1894, duly recovered in the said action in favor of the plaintiff above named and against the defendant, directing Southard Hoffman and Charles Page,

of the firm of Page & Eells, to be and appear before the said judge to answer concerning property of the defendant in their hands or custody or under their control, and enjoining them from transferring or disposing of such property, and the said Southard Hoffman and Charles Page having duly appeared before the said judge, and having been examined on oath concerning property of the defendant in their hands or under their control, and it appearing from such examination that there is now in the possession and under the control of the said Southard Hoffman the following personal property, to wit: One check, dated San Francisco, September 28, 1896, for the sum of $19,918.$^{29}$/$_{100}$ drawn on the subtreasury of the United States of America at the city and county of San Francisco in favor of one Charles Clark, as receiver of the Oregon Pacific Railroad Company, the defendant, and signed by Wm. W. Morrow, judge of the district court of the United States for the Northern district of California, and by Southard Hoffman, clerk of the district court of the United States for the Northern district of California; that the said sum of money mentioned in the said check is the surplus proceeds of the sale in admiralty of the steamship Willamette Valley, her tackle, etc., belonging to the defendant, decreed to be sold by the district court of the United States for the Northern district of California in the libel suit pending therein entitled 'R. D. Chandler against Steamship Willamette Valley'; that the check was so prepared, drawn, and signed in pursuance of a decree of the said district court of the United States for the Northern district of California in the said libel suit of R. D. Chandler against Steamship Willamette Valley, her tackle, etc., made and dated and entered in the said court on the 9th day of June, 1896, directing the clerk of the said court to pay said surplus moneys to Charles Clark, as such receiver, or to Charles Page, his proctor; and it further appearing that the said Charles Clark was appointed such receiver by a court of foreign jurisdiction, to wit, by the circuit court of Oregon, and that the said surplus proceeds arose from the sale of defendant's property, steamship Willamette Valley, while in the state of California, to wit, in the city and county of San Francisco: Now, therefore, on motion of Henry E. Monroe, attorney for plaintiff, it is ordered that Alexander C. Forsyth, Esq., be, and he is hereby, appointed receiver of all the property, real and personal, of the defendant, and of the said check above described, and all other chattels, choses in action, and evidences of debt, with full power and authority to realize thereon, collect all moneys due by suit or otherwise, demand or sue for the same, and to demand and receive from each and every person or persons having in his or their possession or custody or under their control any money, checks, drafts, notes, bills, choses in action, evidences of debt, or other personal or real property belonging to the defendant; or to which the said defendant was or may have been entitled on the 28th day of September, 1896, the date of making the said order of examination by the judge of this court and its service on Southard Hoffman, or on the 29th day of September, 1896, the day upon which the said order of examination was served upon Charles Page. And it is further ordered that the said Alexander C. Forsyth execute an undertaking to the defendant herein in the sum of $100 to faithfully perform his duties as such receiver, and take the oath required by law. "Dated this 14th day of October, 1896.

"[Signed] J. M. Seawell, Judge."

This order was modified by another order on October 23, 1896, and again modified and corrected on October 30, 1896, the final order being as follows:

"It appearing to the court that the order made and entered in the above-entitled action on the 23d day of October, 1896, modifying the order made by this court on the 14th day of October, 1896, appointing a receiver herein, contains words and expressions which do not accurately express the intention of the court, and that the order intended to be made on the said 23d day of October, 1896, should be in the words and figures hereinafter contained: It is now therefore ordered that the order made by this court in the above-entitled action be modified and corrected, and the same is hereby modified and corrected, so as to read as follows: It appearing to the court that on the 14th day of October, 1896, the judge of this court made and entered an order in said cause, reciting certain facts, and thereupon appointing one A. C. Forsyth, as receiver of said defendant corpora-

tion's property, and with authority to sue for the same, and particularly for a certain check signed by the judge and clerk of the district court of the United States for the Northern district of California, which check was payable to one Charles Clark, receiver of the Oregon Pacific Railroad Company, and as it appeared was in the possession of Southard Hoffman, clerk of the said district court; and it further appearing that the said check was made, drawn, and so signed in pursuance of and under the terms of a certain decree made by the district court of the United States for the Northern district of California in the cause entitled 'R. D. Chandler, Libelant, against S. S. Willamette Valley, etc.;' pending in the said district court, wherein the said Charles Clark, receiver of the Oregon Pacific Railroad Company, applied for the remnant of proceeds referred to in such decree, and wherein it is ordered, adjudged, and decreed that the petition of Charles Clark, receiver of the Oregon Pacific Railroad Company, against the remnant of proceeds now in the registry of this court and arising from the sale of the steamship Willamette Valley be, and the same is hereby, granted, and that the clerk pay to the said Charles Clark, receiver as aforesaid, or to his proctor, after payment of all costs incurred in the matter of said intervention and said several petitions, the remnant of proceeds now lying in the registry of this court, amounting to the sum of twenty-three thousand five hundred and twenty-four $^{45}/_{100}$ dollars; and that the amount of the said check is $19,918.$^{29}/_{100}$, and formed part of the remnant; and it further appearing that the said Southard Hoffman claimed to hold the said check in his possession as clerk of the said United States district court, and declined to deliver up the same under the advice and instructions of the district judge of the said United States district court; and it further appearing that the said A. O. Forsyth, as such receiver, under appointment aforesaid, has brought suit in the superior court to compel the surrender to him by said Hoffman of said check, and enjoining him from sending it out of this jurisdiction; and whereas, it was not the intention of the judge of this court to authorize the said receiver to take proceedings by suit or otherwise which might be an infringement upon the jurisdiction of the said district court, if the said check was in fact in its custody for the satisfaction of its own decree, but simply to authorize the said receiver to make such showing as he might be advised before the said district court for the delivery of the said check to him; and it appearing that the order as signed by the judge of this court was inadvertently made, and that the same should be modified: It is now ordered that the said order made on the 14th day of October, 1896, be, and the same is hereby, modified, by setting aside all provisions thereof except the order appointing A. O. Forsyth a receiver of the property of the defendant corporation, and that in this respect the said order be confirmed. It is further ordered that the authority of the said receiver to sue for and take other proceedings for the recovery of the check hereinbefore described be limited to an authority to take such proceedings as he may be advised in the district court of the United States for the Northern district of California, and not elsewhere, unless in a court of the United States of superior jurisdiction to that of the said district court, and that the receiver institute such proceedings within ten days from the date of this order. And it is further ordered that the said receiver, within ten days after the date of this order, dismiss the action heretofore commenced by him in the superior court entitled 'A. O. Forsyth, Receiver, etc., vs. Southard Hoffman et al.,' and numbered 56,932. And it is further ordered that this order stand for and take the place of the order heretofore made and signed by this court, and entered on the 23d day of October, 1896.

"Dated October 30th, 1896.

"J. M. Seawell, Judge of the Superior Court."

In connection with the order of October 23, 1896, Judge Seawell rendered the following opinion, which is equally applicable to the final corrected order of October 30, 1896:

"In the Superior Court of the City and County of San Francisco, State of California.

"W. A. Swinerton vs. Oregon Pacific Railroad Company.

"It was not my intention, when making the order of October 14, 1896, to authorize the receiver to bring any action in a state court for the recovery of the check in the possession of Col. Hoffman. I stated orally that a receiver would be

appointed, so that an application might be made by him to the United States district court. It is true, as claimed by the plaintiff's counsel, that a receiver appointed by this court cannot, as a matter of right, maintain an action or other proceeding in the federal court; but that court would undoubtedly, in a proper case, as a matter of comity, entertain favorably the application of a receiver appointed by this court, and grant such relief as might be proper, provided it did not interfere with the rights of other parties as established by some judgment or decree of that court. Beach, Rec. § 682; High, Rec. § 241. The plaintiff claims that by virtue of the garnishment served upon Col. Hoffman a valid attachment has been made of the check in his hands. As he claims to hold the check in his official capacity as clerk of the United States court, and it appears that he has been ordered by the judge of that court not to produce it in this court, but to apply it as directed by the decree of that court, I consider it equally improper to direct a suit to be brought in the state court against Col. Hoffman, or to order him to deliver the check to the receiver. If there was in fact a valid attachment of the check levied, there does not appear to be any good reason to doubt that the judge of the district court would, upon a proper application by petition, direct the delivery of the check to the receiver. If he should refuse it, it would be because he was of the opinion that the check was not subject to garnishment in the hands of the clerk of his court. The United States court is the only tribunal which can determine that question. I did not, in my former order, intend to inaugurate a conflict between this court and the United States district court. Had such been my intention, I should have ordered Col. Hoffman at once to produce the check, and deliver it to the receiver; for he claimed no interest in it himself. As the litigation begun by the receiver against Col. Hoffman must inevitably end in a conflict between the state and federal courts, I deem it my duty to arrest all further proceedings against the clerk of the United States district court, and to restrict the receiver to such remedies as that court may, as a matter of comity, grant. If I should err in this the plaintiff can have the error corrected by the appellate court. An order will be made vacating so much of the order of October 14th as authorizes the receiver to maintain actions in any other tribunals than the United States courts, and directing him to dismiss the action commenced by him against Col. Hoffman in this court."

Pursuant to the order of October 30, 1896, Forsyth qualified as receiver, and demanded of the clerk of this court and Charles Page that they, and each of them, should deliver to him the check in favor of Charles Clark, hereinbefore described, and, this demand not having been complied with, the said A. C. Forsyth has presented his petition to this court for a writ of mandamus to be directed to Southard Hoffman, the clerk of this court, directing and commanding him to deliver to the petitioner, as receiver of the Oregon Pacific Railroad Company, the said check, alleging that he has no speedy or adequate remedy in the ordinary course of law to obtain or recover the said check or the said moneys on deposit against which it is drawn, or to apply it or its proceeds or the said moneys to the satisfaction of the judgment made and given against the Oregon Pacific Railroad Company in favor of W. A. Swinerton by the superior court of the city and county of San Francisco.

That a conflict of jurisdiction has been avoided in this case by the wisdom of the superior court in dealing with the questions presented to it is what was to have been expected from the high character of that court, but it is not to be overlooked that a certain degree of comity has also been observed by that court which calls for an acknowledgment by this court in the careful consideration it should give to the claim of the petitioner, as the receiver appointed by the superior court, to secure possession of the check in con-

troversy. The fact, therefore, that the judgment here represented was before this court upon an intervention against the proceeds in the registry of the court, and was dismissed without prejudice to any proceedings that might be taken in any other court, will not prevent a full review of the claim of the petition upon its merits.

Section 716 of the Revised Statutes provides:

"The supreme court and the circuit and district courts shall have power to issue writs of scire facias. They shall also have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and the principles of law."

It has been held, under this statute, that the circuit courts of the United States may issue writs of mandamus when necessary to the exercise of their jurisdiction, but they have no authority to issue it as an original writ in any case. McIntire v. Wood, 7 Cranch, 504; McClung v. Silliman, 6 Wheat. 598; Bath Co. v. Amy, 13 Wall. 244; Graham v. Norton, 15 Wall. 427; Greene Co. v. Daniel, 102 U. S. 187; Davenport v. Dodge Co., 105 U. S. 237; Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633. The same limitation would apply to the power of the district courts. Treating this petition as an original proceeding, it is clear the court would have no jurisdiction to entertain it; but it has been said that it may be considered as ancillary to the jurisdiction which the court has already acquired in the case of Chandler v. The Willamette Valley. If this were an application to issue the writ for the purpose of carrying into effect that judgment, this view of the law would undoubtedly be correct, but it must be apparent from the character of the proceedings prosecuted in the state court that such is not the purpose of this petition. It is, on the contrary, an effort to secure the process of this court to satisfy a judgment obtained in the state court, and, perhaps, in a proper case in the distribution of proceeds in the registry of the court such an application would be entertained, and the power of the court exercised summarily in securing the rights of the petitioner according to law and justice, as provided in general admiralty rule No. 43; but where the action of the clerk of the court is to be controlled or directed, a writ of mandamus would not be necessary, and there are reasons why it would not be proper. "There is inherent in every court a power to supervise the conduct of its officers and the execution of its judgments and process. Without this power, courts would be wholly impotent and useless." Griffin v. Thompson, 2 How. 244, 257. This power can be, and is, effectively exercised by the established rules of procedure and by the usual orders and processes of the court. In this case, therefore, the form of the proceeding may be treated as immaterial. The question is, has the petitioner presented such a state of facts as calls for the interposition of the power of the court in his behalf? It is claimed on his behalf that the check in question is held by Southard Hoffman as an individual, and not as the clerk of the court, and that, so holding this evidence of a credit in favor of the Oregon Pacific Railroad Company, of which the petitioner is receiver for the purpose of satisfying the com-

mon-law judgment recovered in the superior court of this state, it was subject to the levy of execution made by the sheriff. This contention is clearly erroneous, and founded upon mistaken premises. The clerk of this court is not, in any sense, holding the check in an individual or private capacity. He is holding it by virtue of being the legally appointed and qualified clerk of this court, and for the purpose of carrying out the lawful order and decree of this court made in the case of Chandler v. The Willamette Valley. But, even though he holds the check in his capacity as clerk of the court, the fund upon which the check is drawn is not in his hands as clerk, nor under his control. It is in the custody and under the absolute and exclusive control of the court. As was well said in The Lottawanna, 20 Wall. 201, where an attempt was made to garnish some surplus proceeds in the registry of the court:

"The proceeds in such a case are not by law in the hands of the clerk nor of the judge, nor is the fund subject to the control of the clerk. Moneys in the registry of the federal courts are required by the act of congress to be deposited with the treasurer of the United States, or an assistant treasurer or designated depositary, in the name or to the credit of such court; and the provision is that no money deposited as aforesaid shall be withdrawn except by the order of the judge or judges of said courts respectively, in term time or vacation, to be signed by such judge or judges, and to be entered and certified of record by the clerk. 17 Stat. 1. Regulations substantially to the same effect have existed in the acts of congress for more than half a century, and within that period it is presumed that no proceeding to attach such a fund by a creditor of the owner has ever been sustained. 3 Stat. 395."

In other words, the possession of the clerk is the possession of the court. In Jones v. Bank, 76 Fed. 683, 684, which involved an attempt to attach money in the Merchants' National Bank of Boston, the designated place of deposit of all moneys paid into the registry of the circuit court of the United States for the district of Massachusetts, the circuit court of appeals, through Putnam, Circuit Judge, said:

"There can be no doubt that the deposit made in that bank, and in controversy in two of these appeals, must be regarded as made under the direction of the circuit court, pursuant to the requirements of the statute, and that it must be treated as the fund of the court, as fully as though it were in the personal possession of the clerk, and therefore subject in all respects to its summary control and disposition, and entitled to protection in all particulars, in order that it may be free at all times for such disposition. Any interference with it, or with the bank where it is deposited, or attempt thereto, which would embarrass in any degree such control or disposition, or harass the bank, or put it to expense, by reason of its possessing the fund, unless the consent of the circuit court was first obtained, would amount, on plain principles of law, to an implied contempt, and, if persisted in understandingly, to an actual one."

The surplus proceeds, upon which this check is drawn is in custodia legis, and is subject to the orders and processes of this court. It is not subject to attachment either by the process of foreign attachment or of garnishment. In the language of the supreme court in The Lottawanna, supra:

"The fund, from its very nature, is not subject to attachment, either by the process of foreign attachment or of garnishment, as it is held in trust by the court, to be delivered to whom it may belong, after hearing and adjudication by the court," citing The Albert Crosby, 1 Lush. 101; The Wild Ranger, Brown. & L. 84; 1 Chit. Archb. (11th Ed.) 702.

In Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, it was distinctly held that the possession of property, by a marshal of a court of the United States, by virtue of a levy under a writ of execution issued upon a judgment recovered in a circuit court of the United States, is a complete defense to an action, in a state court, of replevin of the property seized, without regard to its rightful ownership; and also that the principle that, whenever property has been seized by an officer of the court by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being, applies both to a taking under a writ of attachment or mesne process and a taking under a writ of execution. But it is unnecessary to elaborate further on this well-settled feature of the law. The proposition was fully discussed and considered in the case of Chandler v. The Willamette Valley, 76 Fed. 838, where W. A. Swinerton, by a petition of intervention against the surplus proceeds, sought to obtain the amount of the common-law judgment recovered by him in the state court, and which A. C. Forsyth, as the receiver appointed by that court, now seeks, by this application for a writ of mandamus, to compel the clerk of this court to deliver to him the check drawn upon this fund to satisfy said judgment. This court then held that the common-law judgment constituted no claim upon the surplus proceeds which could be recognized in admiralty as against the superior right of Charles Clark, receiver of the Oregon Pacific Railroad Company, appointed by the state court of Oregon, where the foreclosure proceedings against the corporation and its property, including the steamship Willamette Valley, were instituted and litigated, and are still pending, so far as these surplus proceeds derived from the sale of the said steamship in this court are concerned. The reasons for the decision of the court in that case were fully stated in the opinion just referred to, and need not be repeated here. See opinion, 76 Fed., at pages 850–855. Nothing that counsel for petitioner, Forsyth, have urged on this application has led the court to alter or modify its views in the slightest degree. The conclusion which the court arrived at in the case of Chandler v. The Willamette Valley, supra, as to the proper disposition of the surplus proceeds, is thus stated in the opinion:

"The entire surplus, less all costs, will be paid over to the receiver, Charles Clark, or to his proctors, to be paid by them to the circuit court of the state of Oregon in and for Benton county, where the foreclosure proceedings against the former owners of the vessel, so far as this surplus is concerned, are still pending."

The decree reads, so far as it is material to the present inquiry, as follows:

"That the petition of Charles Clark, receiver of the Oregon Pacific Railroad Company, against the remnant of proceeds now in the registry of this court, and arising from the sale of the steamship Willamette Valley, be, and the same is hereby, granted, and that the clerk pay to the said Charles Clark, receiver as aforesaid, or to his proctor, after payment of all costs incurred in the matter of said intervention and said several petitions, the remnant of proceeds now lying in the registry of this court, and amounting to the sum of twenty-three thousand five hundred and twenty-four $45/100$ dollars."

Upon this sum, as stated, a check was drawn by the clerk, and signed by the judge of this court, in favor of Messrs. Page & Eells, proctors for the receiver, Charles Clark, for the sum of $3,606.16. No question is made with reference to this payment. It is as to the balance of $19,918.29 that the controversy lies. If anything is plain with reference to the proceedings in Chandler v. The Willamette Valley, upon the petitions against the surplus proceeds, as deduced from the opinion of the court rendered in that case, it is that the court intended and directed that the surplus proceeds be paid either to Charles Clark, receiver, or to his proctors, for him, to be by them transmitted or paid into the registry of the circuit court of the state of Oregon in and for Benton county, where the foreclosure proceedings were pending. The fund was to be delivered to Charles Clark, receiver, or to his proctors on his behalf, not absolutely, but merely in trust, to be by them, in obedience to the order and decree of this court, delivered to the receiver's court in the state of Oregon. The receiver and his proctors were practically constituted officers of the court for this purpose, and were accountable to this court for any failure of duty, breach of good faith, or dereliction on their part. Nor can it be said that their duty in this respect is ended until the fund is delivered into the registry of the receiver's court in Oregon. The court will certainly see to it that its determination is carried out, so long as it has jurisdiction of the fund, or of the custodians thereof. Its jurisdiction and power are not exhausted or satisfied until its judgment and decree is carried out. As was said by Chief Justice Marshall, in Wayman v. Southard, 10 Wheat. 1:

"The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process, subsequent to the judgment, in which jurisdiction is to be exercised."

As further illustrating the absolute right of the court over funds in its possession, and its inherent power to see to it that its judgment and decree in relation thereto is enforced, the language of the supreme court in Osborn v. U. S., 91 U. S. 474, is in point:

"The power of the court over moneys belonging to its registry continues until they are distributed pursuant to final decrees in the cases in which the moneys are paid. If from any cause they are previously withdrawn from the registry without authority of law, the court can, by summary proceedings, compel their restitution. In the present case it is no answer to the order for restitution that the appellants received the moneys they obtained as officers of the court, and that they long since ceased to be such officers. If the moneys were illegally taken, they must be restored; and, until a decree of distribution is made and enforced, the summary power of the court to compel restitution remains intact. The power could be applied in no case more fittingly than to previous officers of the court."

This court decided, in Chandler v. The Willamette Valley, supra, that as all the maritime liens against the steamship Willamette Valley had been satisfied, the surplus proceeds should be delivered to the receiver's court in Oregon, as that court was better adapted to do justice as between the rival claimants of the surplus proceeds derived from the sale of the steamship in the registry of this court. Its power to do this is undoubted. As said in The Lottawanna, 21 Wall. 558, 583:

"If a case should be so complicated as to require the interposition of a court of equity, the district court could refuse to act, and refer the parties to a more competent tribunal."

See, also, The E. V. Mundy, 22 Fed. 173.

It follows that, if the court has the power "to refer the parties to a more competent tribunal," it necessarily has the inherent authority to transmit the fund or surplus proceeds which form the subject of the litigation. And until this fund is so delivered into the registry of the receiver's court in Oregon, pursuant to the final order of distribution of the court, it is, to all intents and purposes, in the custody of the court, and cannot be interfered with by foreign attachments or garnishments from the state tribunals. In this view of the power and authority of the court, the fund can no more be interfered with, under the judgment of the court in Chandler v. The Willamette Valley, while it is being transmitted to the receiver's court in Oregon, than it could have been while resting in the registry of the court in the city of San Francisco, pending the determinations of the claims or petitions presented against it. In all these transactions, and in the performance of the clerical duties connected therewith, the clerk of this court was and is but its ministerial officer. If the court itself cannot be interfered with, it is difficult to understand upon what theory its officers can be. The case of Jones v. Bank, 76 Fed. 683, previously referred to, is, in several of its features, analogous to the case at bar, and the principles therein enunciated are applicable to the case at bar. It is true that the methods of procedure to obtain the fund in the registry of the court were different. In the case referred to it was sought to accomplish this by bills in equity filed in the circuit court, where the money was deposited, claiming title to the fund, and praying that the same be paid to the complainants. Three separate bills were filed. In the case at bar it is sought to accomplish the same purpose by a petition to the court that it grant a writ of mandamus, commanding and directing its clerk to deliver to the petitioner, A. C. Forsyth, as receiver for the state court, the check drawn upon the fund in the registry of the court. But this difference in the remedy is immaterial, so far as the principles involved are concerned. A decree was rendered in favor of the defendants in each case; that is to say, the court refused to permit the fund to be interfered with. The cases were appealed to the circuit court of appeals, and the judgments of the lower court were affirmed. Putnam, Circuit Judge, in the course of the opinion of the appellate court, said:

"Our attention has been called to the want of parties, but we prefer to put our decision on such grounds as will protect the depositaries of the federal courts in this circuit from all such attempts to harass them. We doubt not these bills were filed entirely in consequence of a zealous desire to seek a remedy for a supposed right, and with no purpose beyond that. Yet the occasion requires us not to state at large why proceedings of this character are not tolerated by the law, but only to declare the rule, so that no one can hereafter excuse himself for not regarding it. The futility of all such bills is sufficient to defeat them, because, notwithstanding the pendency of one of them, the court having control of a fund may order the entire disposition of it summarily, thus leaving nothing for the bill to

act on. A bill which can reach no result except by staying the ordinary and rightful exercise of the essential functions of the court is, by its character, so futile that it ought to be dismissed for that reason alone; but it is enough to say that the rule that bills of this sort will not be tolerated is so fundamental, and so necessary to the full exercise of judicial functions, that the reasons on which it rests need not be further stated."

The reasoning in the case just quoted from is directly applicable to this petition for a writ of mandamus. The purpose of the petition is to attach funds in the registry of this court, which the court has already decided belong to another person; and it is sought to do this in favor of one holding a claim which was presented to the court in the case of Chandler v. The Willamette Valley, and was there fully discussed and considered, and denied. No appeal was taken. It is now attempted, by these supplementary proceedings, to induce the court to reverse itself with respect to this claim, and for no stronger reason than that it is contended that the clerk of the court, who now holds, ready for delivery to Charles Clark, the receiver, the check drawn upon the fund which this court has, after full discussion and consideration, ordered to be transmitted into the registry of the receiver's court in Oregon, is holding such check in his personal, and not official, capacity. The contention is without foundation, and to grant it would be to frustrate the determination of this court in Chandler v. The Willamette Valley, supra. The position which the clerk of this court occupies with reference to the check in question, and his primary duty to obey and carry out the orders and judgments of this court, are nowhere stated more felicitously than in the case of Senior v. Pierce, 31 Fed. 625, 629. Love, J., said:

"Since, then, property in the hands of an officer of a court under legal process is to be considered as in the custody of the court, the officer would clearly have no right to surrender it without the order of the court, to whom he owes obedience; and therefore an attempt of an officer of an alien jurisdiction to take the property out of the possession of the officer holding it must inevitably either prove futile, or lead to a forcible collision. Would the officer in possession be justified in surrendering the property at the mandate of a court foreign to him, and without any power whatever to give him protection against the orders of his own court? Would it not be his duty to resist by force the attempt of an officer of a different jurisdiction to take the property from his custody? Can the officer in possession be required to determine for himself, in advance of the judgment of his own court, and of the court from which the writ of replevin issues, the right of the plaintiff suing out a replevin from an alien jurisdiction to the property in dispute, and the authority of the officer serving the writ of replevin to seize and take the property? And can an officer be adjudged to be in contempt, and punished for his disobedience, to the process of an alien jurisdiction, while acting in obedience to the command of his own court in refusing to deliver up property which he holds as the mere custodian of that court?"

The reason for this is that, "while state and national tribunals are independent and separate, neither can impede or arrest any action the other may take, within the limits of its jurisdiction, for the satisfaction of its judgments or decrees." Adams v. Trust Co., 15 C. C. A. 1, 66 Fed. 620. It is clear, therefore, that under the principles of law referred to as applied to the circumstances and facts of the case at bar, the petition should be dismissed, and it is so ordered; the costs of this proceeding to be paid by the petitioner.